No. 24-1853

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

### ISRAEL RUIZ,

*Plaintiff-Appellant,*

**v.**

### J.B. PRITZKER, ROB JEFFREYS,
### EDITH CRIGLER, & KWAME RAOUL

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division

Case No. 1:22-cv-07171

The Honorable John Robert Blakey

---

## REPLY BRIEF
## PLAINTIFF-APPELLANT ISRAEL RUIZ

---

Ann H. MacDonald
William P. Ziegelmueller
Meera Gorjala
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500
ann.macdonald@afslaw.com
bill.ziegelmueller@afslaw.com
meera.gorjala@afslaw.com

*Counsel for Plaintiff-Appellant*

*January 13, 2025*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

ARGUMENT .............................................................................................. 1

   I.   Mr. Ruiz Stated An Equal Protection Claim. ...................................... 2

       A.   The District Court Erroneously Discounted Plaintiff's Allegations
           And Viewed The Facts In the Light Most Favorable To Defendants..... 2

       B.   Mr. Ruiz Is Not Arguing, And His Claims Do Not Require Holding,
           That All Prospective-Only Statutes Are Unconstitutional.................... 7

       C.   Any State Interest In Applying Other Statutes Prospectively Does
           Not Alter The Rational Basis Analysis Here. ......................................... 9

       D.   Defendants' Rational Bases Were Refuted Or At A Minimum
           Should  Not Be Credited At This Stage Of The Case. ........................... 9

   II.   Mr. Ruiz Stated An Eighth Amendment Claim................................... 11

       A.   The Act's Arbitrary Withholding of Parole Eligibility Violates the
           Eighth Amendment. .................................................................. 12

       B.   Defendants Ignore The Unique Circumstances Applicable To Youth
           Offenders Recognized In *Miller* And Its Progeny. ............................... 13

       C.   A Showing of a *De-Facto* Life Sentence is Unnecessary for
           Mr. Ruiz's Claim, But His Sentence Supports His Claim. ................... 16

   CONCLUSION........................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blystone v. Pennsylvania,*
  494 U.S. 299 (1990)................................................................12

*Burch v. Tennessee Dep't of Correction,*
  994 S.W.2d 137 (Tenn Ct. App. 1999)................................................9

*Carter v. State,*
  512 N.E. 2d 158 (Ind. 1987) ........................................................9

*Collins v. Youngblood,*
  497 U.S. 37, 110 S. Ct. 2715,  111 L. Ed. 2d 30 (1990)................................7

*Commonwealth v. Mattis,*
  493 Mass. 216, (2024)..............................................................14

*D.B. ex rel. Kurtis B. v. Kopp,*
  725 F.3d 681 (7th Cir. 2013) ......................................................6

*Eddings v. Oklahoma,*
  455 U.S. 104 (1982)...............................................................13

*Ex parte Zimmerman,*
  838 So. 2d 408 (Ala. 2002)........................................................9

*Falls v. Town of Dyer, Ind.,*
  875 F.2d 146 (7th Cir. 1989) ......................................................5

*FCC v. Beach Communications,*
  508 U.S. 307 (1993)..............................................................5, 6

*Furman v. Georgia,*
  408 U.S. 238 (1972)...............................................................12

*Getsy v. Mitchell,*
  456 F.3d 575 (6th Cir. 2006) ......................................................13

*Homeyer v. Stanley Tulchin Assocs., Inc.,*
  91 F.3d 959 (7th Cir.1996) ........................................................4

*Jones v. Cupp,*
  452 F.2d 1091 (9th Cir. 1971) .....................................................8

*Matter of the Personal Restraint of Monschke,*
  197 Wash. 2d 305. 482 P.3d 276 (2021) ............................................15

*May v. Sheahan,*
  226 F.3d 876 (7th Cir. 2000) ................................................. passim

*McKinley v. Butler,*
  809 F.3d 908 (7th Cir. 2016) ......................................................14

*McQueary v. Blodgett,*
  924 F.2d 829 (9th Cir. 1991) ........................................................ 8

*Miller v. Alabama,*
  567 U.S. 460 (2012).......................................................... 13, 14, 15

*Montgomery v. Louisiana,*
  577 U.S. 190, 212 (2016)....................................................... 10, 14

*People v. Grant,*
  71 Ill. 2d 551 (1978) ................................................................. 8

*People v. Hunter,*
  2016 Ill App (1st) 141904, *aff'd on other grounds,* 2017 IL 121306 ........... 8

*People v. Parks,*
  510 Mich. 225, 987 N.W.2d 161 (2022) ......................................... 15

*People v. Smith,*
  234 Cal. App. 4th 1460 (2015)................................................... 9

*Pittsfield Dev., LLC v. City of Chicago,* No. 17 C 1951,
  2017 WL 5891223 (N.D. Ill. Nov. 28, 2017) ................................... 4

*Ruiz v. United States,*
  990 F.3d 1025 (7th Cir. 2021) ................................................... 16

*State v. Clayton,*
  19 N.J. Super. 556 (App. Div. 1952) ........................................... 9

*State v. Ross,*
  152 Wash. 2d 220 (2004) ......................................................... 9

*United States v. Finley,*
  487 F.App'x 260 (6th Cir. 2012) ................................................. 8

*United States v. Goncalves,*
  642 F.3d 245 (1st Cir. 2011) ..................................................... 8

*Univar, Inc. v. Geisenberger,*
  409 F. Supp. 3d 273 (D. Del. 2019) ............................................. 5

*Zobel v. Williams,*
  457 U.S. 55 (1982) ................................................................ 6

## Other

Ill. Comp. Stat. Ann. 5/5-4.5-115(b) ...................................................... passim

Fed. R. Civ. P. 12(b)(6).................................................................... passim

# ARGUMENT

Illinois' 2019 Youthful Parole Law ("the Act") made certain youth offenders eligible for parole. 730 Ill. Comp. Stat. Ann. 5/5-4.5-115. Specifically, Section 5-4.5-110(b) of the Act provides that a person who is convicted of first degree murder committed when they were under 21 years of age shall be eligible for parole review after they serve 20 years or more of their sentence. By its terms, the Act granted the new opportunity for parole only to youth offenders sentenced on or after June 1, 2019. 730 Ill. Comp. Stat. Ann. 5/5-4.5-115(b).  Mr. Ruiz, who was sentenced in 2000 but otherwise meets the Act's criteria, is ineligible for parole.

In his Opening Brief, Mr. Ruiz argued that he had stated claims that the Act's grant of parole eligibility only to those sentenced after June 1, 2019, violates both Fourteenth Amendment's Equal Protection Clause and the Eighth Amendment's prohibition on cruel and unusual punishment.  Accordingly, he asked the Court to reverse the district court's dismissal of those claims.

In their Response Brief, Defendants seek to avoid the impact of the district court's failure to follow well-established Rule 12 caselaw by mischaracterizing Mr. Ruiz's arguments and overstating the impact of the ruling he requests.  However, when Mr. Ruiz's real arguments are considered under the appropriate standards, it is clear that the district court errored and its decision should be reversed.

For all these reasons, and those set forth in Mr. Ruiz's Opening Brief, the Court should reject Defendants' arguments and hold Mr. Ruiz has state claims under the Equal Protection Clause and the Eighth Amendment.

## I.   **Mr. Ruiz Stated An Equal Protection Claim.**

In their Response, Defendants make four main arguments in trying to defend the district court's decision dismissing Mr. Ruiz's equal protection claim. None are persuasive. First, Defendants claim, contrary to this Court's precedents, that Rule 12 does not require a court to take as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff when addressing equal protection claims. Second, Defendants argue that a statute's prospective-only application does not automatically make it unconstitutional, despite the fact that Mr. Ruiz is not arguing for such a rule. Third, and relatedly, they argue that the state's interest in having some laws apply prospectively makes the Act's prospective-only application constitutional. And fourth, they argue that other rational bases (like improving sentencing and finality of judgments) demonstrate this law had a rational basis (even though it has no impact on sentencing or court judgments). As Mr. Ruiz addresses below, none of these arguments is valid and the District Court's decision as to Mr. Ruiz's equal protection claim should be reversed.

### A.   The District Court Erroneously Discounted Plaintiff's Allegations And Viewed The Facts In the Light Most Favorable To Defendants.

In their brief, Defendants take various and contradictory positions as to the deference that should be afforded to Mr. Ruiz's allegations at the pleading stage of this case.  In a section of their brief regarding the standard of review, Defendants correctly state that, when evaluating a motion to dismiss, "the court 'accepts as true all well-pleaded facts in the complaint and draws reasonable inferences in favor of the plaintiff.'"  Resp. Br. at 11 (citing *Kap Holdings, LLC v. Mar-Cone Appliance Parts*

*Co.*, 55 F.4th 517, 523 (7th Cir. 2022)). But later, Defendants claim Mr. Ruiz "misunderstands rational basis review" when he argues that the district court "improperly credited defendants' assertions" and "improperly ignored allegations in the Amended Complaint." (Resp. Br. at 23.) Accordingly, it appears that Defendants are urging the Court, whether directly or indirectly, to create an exception to the well-established guidelines for deciding Rule 12 motions.

In support of their argument that the Court should not accept Mr. Ruiz's allegations as true, Defendants mischaracterize this Court's decision in *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). But *May* confirms that the Rule 12 analysis is not altered in an equal protection case.

In *May*, the plaintiff brought an equal protection claim against the Cook County Sheriff, claiming that pre-trial detainees housed in Cook County Jail were improperly treated differently than pre-trial detainees housed at Cook County Hospital. *Id.* at 882. In a motion to dismiss, the Cook County Sheriff argued that "that hospital detainees and jail detainees do not warrant equal treatment because they are not similarly situated and different treatment is rationally related to security concerns." *Id.* The district court denied the Sheriff's motion and the Sheriff appealed. *Id.* at 879.

In affirming the district court's ruling, this Court found that "the problem with [the Sheriff's] argument is that it can be accepted only after one assesses the strength and nature of [his] security concerns as well as the amount and kind of similarity in the situations of hospital detainees and jail detainees." *Id.* at 882. The decision

continues, "[a]t the motion to dismiss stage, it is premature to make such factual assessments." *Id*. (citing *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962–63 (7th Cir. 1996)).

In deciding *May*, the Court recognized the possibility that, *at the summary judgment stage*, the evidence could show "that hospital detainees and jail detainees are not similarly situated with respect to the purposes of the challenged policies and that [the Sheriff's] security or other concerns justify different treatment," and then the Sheriff would be entitled to a favorable ruling. *Id*. However, *at the motion to dismiss stage*, the Court held that it was "enough that [the plaintiff's] allegations are recognizable as and consistent with an equal protection claim." *Id*.

As in *May*, here, "it is premature to make . . . factual assessments" that Defendants' proffered rational bases are plausible in the face of Mr. Ruiz's allegations refuting them. *Id*. A plaintiff does not need to "provide unnecessary specifics" at the pleading stage to survive a dismissal; instead, a plaintiff only needs to "provide the Court with allegations of fact adequate to raise an inference of liability" on the government's behalf. *Pittsfield Dev., LLC v. City of Chicago*, No. 17 C 1951, 2017 WL 5891223, at *10-11 (N.D. Ill. Nov. 28, 2017) ("With *Wroblewski* in mind, the Court finds that it is ill-equipped at this juncture to dismiss a substantive due process claim based on hypothesized, unsubstantiated rational bases surmised entirely without the benefit of fact discovery"; "[the plaintiff's] allegations raise the reasonable inference that the . . . Ordinance was arbitrary in nature. At the pleadings stage, this is enough.") (citing *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)).

Because Mr. Ruiz's claim here is "plainly recognizable as and consistent with an equal protection claim," it should not have been dismissed. *May*, 226 F.3d at 882; *see also Falls v. Town of Dyer, Ind.,* 875 F.2d 146, 148 (7th Cir. 1989) ("Stopping this litigation [on an Equal Protection claim] on a motion under Rule 12(b)(6) was premature."); *Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d 273, 284 (D. Del. 2019) (holding that complaint stated a claim where allegations demonstrated that proposed rational basis for a classification was not legitimate).

Defendants also attempt to avoid the impact of the Rule 12 requirements and caselaw like *May* by selectively quoting from various other authorities, such as *FCC v. Beach Communications*, 508 U.S. 307 (1993). For example, Defendants quote the *Beach* Court's statement that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." (Resp. Br. at 12-13 (citing *Beach*, 508 U.S. at 315).)

But that *Beach* discussion of fact-finding should be understood in the procedural context of that case, namely where the Court of Appeals for the D.C. Circuit had previously remanded the case back to the administrative agency at issue, the Federal Communications Commission ("FCC"), to conduct further fact finding to support a regulation it had adopted. 508 U.S. at 312 (noting the appellate court "remanded the record and directed the FCC to provide additional legislative facts to justify the distinction" at issue) (internal quotations omitted). The *Beach* Court held that a legislating body need not conduct fact finding to support a legislative choice and that the rational basis evaluation was not limited to the legislative record. *Id*. at

315 ("we never require a legislature to articulate its reasons for enacting a statute"). That is a very different conclusion than the one that Defendants seek here, which is to avoid application of well-established Rule 12 precedent during evaluation of a motion to dismiss.[1]

Moreover, the Supreme Court's decision in *Beach* predated this Court's opinion in *May*, so this Court had the benefit of *Beach* when it nonetheless declined to dismiss the *May* plaintiff's claims in the face of the Sheriff's suggested rational bases.

And *Beach* did not overrule other Supreme Court precedent like *Zobel v. Williams*. Contrary to the State's attempt to minimize the Supreme Court's holding in *Zobel*, that case held it is patently unconstitutional to discriminate against individuals based on an arbitrary date that creates no distinction requiring a difference in treatment. 457 U.S. 55, 61-64 (1982) (rejecting three alleged legitimate bases offered by state and holding plan violated the Equal Protection Clause of the Fourteenth Amendment).

Here, Mr. Ruiz alleged sufficient facts in his Amended Complaint to state a viable claim and not "[plead himself] out of court" by disclosing a rational basis for the statute. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (on review of a decision granting a motion to dismiss, holding "the proper question here is this:

---

[1] Defendants also rely heavily on *Wis Educ. Ass'n Council v. Walker* to support this argument, but that decision was an appeal from cross motions for judgment on the pleadings and for summary judgment where facts were undisputed. 705 F.3d 640, 644 (7th Cir. 2013). It did not address the proper standard to assess a motion to dismiss in an equal protection case. Likewise, neither *Lopez Ramos v. Barr*, 942 F.3d 376, 378 (7th Cir. 2019) (review of a removal decision of the Board of Immigration Appeals ("BIA")) nor *United States v. Nagel*, 559 F.3d 756, 760 (7th Cir. 2009) (direct appeal from criminal sentence) addressed the Rule 12 standard.

Does the complaint reveal a rational basis"). The Amended Complaint alleged that the Act's prospective-only grant of parole eligibility violates the Equal Protection Clause because there is no rational basis to treat youth offenders differently based solely on whether they were sentenced before, or after, June 1, 2019. (Dkt. 24. at ¶¶ 42-54.) The Supreme Court and Illinois legislature have recognized that all youth offenders have diminished culpability, regardless of sentencing date. Importantly, Defendants have not argued that Mr. Ruiz "plead himself out of court."

Because these facts must be taken as true, the Amended Complaint sufficiently alleged at the pleadings stage that the Act's prospective grant of parole eligibility lacks a rational basis.

B.    Mr. Ruiz Is Not Arguing, And His Claims Do Not Require Holding, That All Prospective-Only Statutes Are Unconstitutional.

Contrary to Defendants' misleading argument, Mr. Ruiz is not arguing all prospective-only laws are unconstitutional. (*See, e.g.,* Resp. Br. at 14.) This case does not require the Court to overturn other precedents or create a new rule banning all laws that apply only prospectively.

Mr. Ruiz recognizes that, in many instances, statutes must be prospective only, for example, when they announce that certain conduct is newly criminal. The Constitution requires as much. *See, e.g., Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (discussing the constitutional prohibition on *ex post facto* laws). Here, Mr. Ruiz argues that the Act, when applied prospectively-only, is unconstitutional because that prospective-only application of the Act lacks a rational basis.

7

Moreover, this case is clearly distinguishable from the sentencing cases cited by the Defendants and the District Court, *United States v. Speed* and *United States v. Sanders*, which allowed for prospective-only changes to sentencing statutes. (*See e.g.* Resp. Br. at 14-15 (citing *Speed*, 656 F. 3d 714 (7th Cir. 2011) and *Sanders*, 909 F.3d 895 (7th Cir. 2018)).)

Defendants claim, as in *Speed* and *Sanders*, that a discrepancy in parole eligibility is "plainly rational" because it is just as "unavoidable" when a parole statute is amended, as discrepancies are in sentences when a criminal penalty is amended. (Resp. Br. at 17.) But that argument is based on flawed logic. Discrepancies are inevitable with sentencing law changes because some portion of relevant individuals have already been sentenced. That is not true here. In this case, a certain group of youth offenders never had opportunities for parole before the Act was passed. Expanding parole rights did not have to be prospective-only because the time for a parole hearing had not passed for anyone to whom a parole hearing might be granted.

Mr. Ruiz's claim here is that there is no rational basis for applying the Act only prospectively. His Amended Complaint, when viewed in the light most favorable to him, has plausibly stated a claim that prospective only application of the Act lacks a rational basis. Defendants' cases discussing prospective-only application in other scenarios, where some sentencing discrepancy is inevitable, are irrelevant.[2]

---

[2] *See also* Resp. Br. 15-17 (discussing sentencing cases and citing *United States v. Finley*, 487 F.App'x 260 (6th Cir. 2012); *United States v. Goncalves*, 642 F.3d 245 (1st Cir. 2011); *McQueary v. Blodgett*, 924 F.2d 829 (9th Cir. 1991); *Jones v. Cupp*, 452 F.2d 1091 (9th Cir. 1971); *People v. Grant*, 71 Ill. 2d 551 (1978); *People v. Hunter*, 2016 Ill App (1st) 141904; *State v. Ross*, 152 Wash. 2d 220 (2004); *Ex parte Zimmerman*, 838 So. 2d 408 (Ala. 2002); *Carter v. State*, 512 N.E. 2d 158 (Ind. 1987); *People v. Smith*, 234 Cal. App. 4th 1460 (2015); *Burch v.*

C.      Any State Interest In Applying Other Statutes Prospectively Does Not Alter The Rational Basis Analysis Here.

Defendants attempt to argue that a generic state interest in having laws that apply prospectively means that there is a rational basis for prospective-only application here.  But Defendants cite no authority suggesting that such an interest can end-run traditional rational basis review.  In the same section, Defendants also argue that, for the Court to agree with Mr. Ruiz, it must find all federal and state savings statutes to be unconstitutional.  (*See, e.g.,* Resp. Br. at 19.)  But Mr. Ruiz is not arguing that at all.  Mr. Ruiz is arguing that there is no rational basis for the Act.

D.      Defendants' Rational Bases Were Refuted Or At A Minimum Should Not Be Credited At This Stage Of The Case.

Finally, Defendants fourth argument that other rational bases support prospective-only application should also be rejected.  Defendants proposed three potential rational bases to support the Act's prospective grant of parole eligibility: the finality of sentences and judgments, protection of victim's expectations, and administrative burden. However, all three are either inapplicable or directly refuted by the allegations in the Amended Complaint.

First, concerns about the finality of judgments or sentencing cannot provide a rational basis for the Act because applying the Act retroactively would not result in resentencing or overturn any convictions; instead, it would only impact the granting of parole. (*See* Dkt. 24. at ¶¶ 2, 24.) As recognized by the Supreme Court in *Montgomery v. Louisiana*, granting parole eligibility would "not require States to

---

*Tennessee Dep't of Corr.*, 994 S.W.2d 137 (Tenn Ct. App. 1999); *State v. Clayton*, 19 N.J. Super. 556 (App. Div. 1952)).

relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." 577 U.S. 190, 212 (2016) ("Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions."). Instead, it would only provide youth offenders with the opportunity for a parole hearing, and would only allow them to be released if Parole Review Board properly grants parole. (*See also* Op. Brief at 13.)

Second, Defendants' arguments regarding protecting a victim's expectations are also flawed. If such a concern plausibly justified denying parole opportunities, then there would be no parole opportunities at all because parole, when allowed, inherently involves altering a release date. It makes no sense that it is rational to not allow parole to protect one set of victims from a potential earlier release date, when the Act explicitly contemplates earlier release dates for other offenders who may be subject to parole and in whose cases there may be interested victims. And given that the Act explicitly outlines a procedure for victim involvement, Defendants' argument amounts to asking the Court to adopt a rational basis that is explicitly undermined by the language of the Act. That is plainly not rational. The existing procedures provide that any concern about victim's expectations would be considered at a parole hearing. (*See also* Op. Br. at 14-15.)

Finally, Defendants' arguments about any potential administrative burden were rebutted by the Amended Complaint and would require disregarding Mr. Ruiz's allegations, which is improper at the pleadings stage. As stated in Mr. Ruiz's initial brief, parole hearings impose no burden on judicial resources. (Op. Br. at 9.) Any

arguable administrative burden is outweighed by the cost of housing youth offenders for longer than necessary, as demonstrated by the facts in the Amended Complaint. (Dkt. 24 at ¶ 40.) Defendants have not said how many potential parole hearings could be implicated given the number of offenders similarly situation to Mr. Ruiz, and they also do not acknowledge that even if it takes two or three parole hearings to be released, the burdens of hearings are still substantially lesser than housing offenders, like Mr. Ruiz, for decades. If anything, Defendants' arguments about administrative burden are the very sort of potential rational bases that the Court declined to weigh on a motion to dismiss in *May*.  226 F.3d 882.

The Court should hold that Mr. Ruiz has stated an equal protection claim.

## II.    <u>Mr. Ruiz Stated An Eighth Amendment Claim.</u>

Mr. Ruiz adequately alleged an Eighth Amendment claim based on the arbitrary imposition of harsher punishment on youth offenders solely based on sentencing date. Defendants' Response Brief mischaracterizes Mr. Ruiz's arguments, while unduly minimizing both the Eighth Amendment requirement to avoid arbitrary punishment and the unique circumstances applicable to punishing youth offenders.

To be clear, Mr. Ruiz is not arguing that the Act's prospective-only application makes his sentence unconstitutional. Resp. Br. at 27.  In other words, he is not arguing that, had the act not been passed at all, his sentence would be constitutional. Rather, he is arguing that, in light of new science on life expectancy and the diminished culpability of youth offenders aged 18-25, denying him the possibility of parole is unconstitutional.  The state's actions in expanding parole rights recognized that science but did not do enough to comply with constitutional requirements.

The Supreme Court has clearly determined that youth offenders exhibit diminished culpability based on their circumstances and scientific understandings of brain maturation. The Act violates the Eighth Amendment by recognizing the applicability of those principles but applying them arbitrarily only to those sentenced after June 1, 2019.

A.    The Act's Arbitrary Withholding of Parole Eligibility Violates the Eighth Amendment.

Defendants attempt to limit the applicability of *Furman v. Georgia* by focusing on statements in Justice Douglas' concurrence and narrowing its application to the death penalty. However, *Furman* and related cases clearly articulate that arbitrarily imposed punishments violate the Eighth Amendment. *Furman v. Georgia*, 408 U.S. 238 (1972).

The Supreme Court in *Furman* invalidated existing death penalty laws because they failed to generate acceptably consistent outcomes. *See Blystone v. Pennsylvania*, 494 U.S. 299, 303 (1990) (noting that the constitutional defect identified in *Furman* was that "unguided juries were imposing the death penalty in an inconsistent and random manner on defendants"). Each of the concurring opinions in *Furman* relied on different forms of statistical evidence to demonstrate patterns of inconsistent or otherwise arbitrary sentencing. *Furman*, 408 U.S. at 249–52 (Douglas, J., concurring); *id.* at 291–95 (Brennan, J., concurring); *id.* at 309–10 (Stewart, J., concurring); *id.* at 313 (White, J., concurring); *id.* at 364–66 (Marshall, J., concurring). Evidence of inconsistent results, or sentencing decisions that could

not be explained on the basis of individual culpability, indicated that the system operated arbitrarily and therefore violated the Eighth Amendment.

But, *Furman*'s prohibition against arbitrary punishments is not limited to the death penalty. In cases since *Furman*, courts have "emphasized [their] pursuit of the 'goals of measured, consistent application and fairness to the accused.'" *Eddings v. Oklahoma*, 455 U.S. 104, 111 (1982). "The *Furman* principle of general application interpreting the Eighth Amendment has been clearly established since 1972," and clearly applies here; inconsistent punishments based solely on sentencing date are "exactly the sort of unconstitutionally arbitrary and capricious outcomes that *Furman* and its progeny condemned." *Getsy v. Mitchell*, 456 F.3d 575, 581 (6th Cir. 2006), reh'g en banc granted, opinion vacated (Nov. 22, 2006).

> ### B. Defendants Ignore The Unique Circumstances Applicable To Youth Offenders Recognized In *Miller* And Its Progeny.

Defendants' response also fails to refute the applicability of the Supreme Court's precedent in *Miller v. Alabama*, 567 U.S. 460 (2012). *Miller* recognized that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." 567 U.S. at 472.

While *Miller* involved juvenile offenders who were minors at the time of their offenses, its reasoning still applies here, in particular given the allegations in the Amended Complaint (Dkt. 24) regarding the diminished culpability of offenders aged 18-25 and the limited life expectancy of inmates who have been incarcerated since youth.

In *Miller*, the Supreme Court found that juveniles "are less deserving of the most severe punishments" because they are likely to engage in reckless or impulsive behavior, but they often are reformed as they age and have great capacity for change over time. *Miller*, 567 U.S. at 471. The Supreme Court also recognized that juveniles lack the ability to "extricate themselves from horrific, crime-producing settings" because they have less control over their environment and therefore are more likely to be more susceptible to negative influences and outside pressures. *Id.*

The Supreme Court in *Miller* ultimately held that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes," because youth offenders are less blameworthy and unlikely to need future deterrence as they mature. *Id.* at 472. The Supreme Court later found that *Miller*'s ultimate conclusion that mandatory life without parole sentences were unconstitutional for juveniles must be applied retroactively. *Montgomery*, 577 U.S. at 206.

In addition, other courts have recognized that the principles upheld by the Court in *Miller* and *Montgomery* apply equally in other contexts involving youthful offenders over the age of majority. *See McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016) (acknowledging that *Miller* can apply to *de facto* life sentences); *Commonwealth v. Mattis*, 493 Mass. 216, 235 (2024) (holding that mandatory imposition of life without parole for adults who were 18 to 20 years old at time of offense constituted cruel or unusual punishment); *Matter of Monschke*, 197 Wash. 2d 305, 329, 482 P.3d 276, 288 (2021) (holding that mandatory life sentences for 19-year-old and 20-year-

14

old convicted of aggravated murder violated a State constitutional provision similar to the Eighth Amendment); *People v. Parks*, 510 Mich. 225, 244, 987 N.W.2d 161, 171 (2022) (holding Michigan Constitution's Cruel or Unusual Punishments Clause requires that 18-year-olds convicted of first-degree murder receive the same individualized statutory sentencing procedure as juveniles who have committed first-degree murder).

The principles of *Miller* and the related line of cases apply to offenders sentenced above the age of 17, despite Defendants' contentions otherwise. Mr. Ruiz was sentenced for a crime that was committed when he was at 18 years of age. In *Miller*, the Supreme Court found that juveniles "are less deserving of the most severe punishments" because "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." 567 U.S. at 471-72. As alleged in the Amended Complaint, recent studies have confirmed that the human brain does not mature fully until the age of 25. (Dkt. 24 at ¶ 31.) The Illinois Legislature recognized these scientific developments in deciding to grant parole eligibility to offenders who were sentenced for crimes committed before their brains matured—but arbitrarily decided to grant that eligibility only to those sentenced after June 1, 2019.

Even if some previous cases only applied to youth sentenced at 17 or younger, the imposition of special circumstances for youth was based on evolving understandings of brain maturation. (Resp. Br. at 24.) As stated by Judge Wood, "science does not stand still, and there is no reason to think that it will do so going

forward. The scientific community's views on the development of the brain evolve all the time." *Ruiz v. United States*, 990 F.3d 1025, 1039 (7th Cir. 2021) (Wood J., dissenting).

The Amended Complaint provided sufficient factual allegations, which must be considered at true at this stage, that the science supporting treating youth offenders differently applies to those sentenced at 25 or younger, or at least 21.[3]

C.    A Showing of a *De-Facto* Life Sentence is Unnecessary for Mr. Ruiz's Claim, But His Sentence Supports His Claim.

Finally, Defendants cite a laundry list of cases in their attempt to show that Mr. Ruiz is not serving a *de facto* life sentence. (Resp. Br. at 34.) However, Mr. Ruiz need not allege, or prove, that he is serving a de facto life sentence for his Eighth Amendment claim to succeed.

That said, the cases cited by Defendants fail to take into account recent developments in our understanding of the life expectancy of incarcerated youth. As alleged in the Amended Complaint, the average life expectancy of an incarcerated youth is 50.6 years. (Dkt. 24 at ¶ 41.) That means that Mr. Ruiz will not be released until well after the life expectancy of someone in his position based on his sentence. The same is true of other youth offenders in Illinois in the same position. These considerations only bolster that it is cruel and unusual to arbitrarily determine which offenders are required to stay in prison for what could likely amount to a life sentence

---

[3] The Act applies to those 21 and younger, but Mr. Ruiz was 18 when he was charged, just one year older than the line Defendants' urge, while disregarding Mr. Ruiz's factual allegations.

and which offenders are eligible for parole solely based on the date they were sentenced.

## **CONCLUSION**

For the foregoing reasons and for the reasons discussed in Mr. Ruiz's Opening Brief, Mr. Ruiz has adequately stated claims for relief under the Equal Protection Clause and the Eighth Amendment. Accordingly, the Judgment of the District Court should be reversed and the case remanded for further proceedings.


Dated:  January 13, 2025                    Respectfully submitted,

                                            */s/ Ann H. MacDonald*
                                            Ann H. MacDonald
                                            William P. Ziegelmueller
                                            Meera Gorjala
                                            ARENTFOX SCHIFF LLP
                                            233 S. Wacker Dr., Suite 7100
                                            Chicago, Illinois 60606
                                            (312) 258-5500 (tel)
                                            (312) 258-5600 (fax)
                                            ann.macdonald@afslaw.com
                                            bill.ziegelmueller@afslaw.com
                                            meera.gorjala@afslaw.com

                                            *Attorneys for the Plaintiff-Appellant,*
                                            *Israel Ruiz*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Cir. R. 32(c) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,478 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(s)(6) and Cir. R. 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook.

*/s/ Ann. H. MacDonald*
Ann H. MacDonald

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Ann. H. Macdonald*
Ann H. MacDonald